IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: | ) |
| | ) |
| SLM TRANS, INC., | ) |
| | ) |
|     Debtor, | ) |
| | ) |
| JEANINE C. HICKS and | ) |
| HAL D. HICKS, | ) |
| | ) |
|     Defendants/Appellants, | ) |
| | ) |
| vs. | )   Case No. 09-cv-0993-MJR |
| | ) |
| ROBERT T. BRUEGGE, Trustee | ) |
| of the Estate of SLM Trans, Inc., | ) |
| | ) |
|     Plaintiff/Appellee. | ) |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

    **I.    Procedural and Jurisdictional Overview**

On September 10, 2009, United States Bankruptcy Judge Kenneth J. Meyers entered Judgment for Avoidance and Recovery of Fraudulent Transfer in Adversary Number 09-06023, and it is this judgment from which Hal D. Hicks and Jeanine Hicks ("Appellants") appeal to this District Court. Subject matter jurisdiction lies under 28 U.S.C. § 158(a)("district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees ... of bankruptcy judges entered in cases" referred to them under 28 U.S.C. § 157.). This appeal was timely filed, and the parties have thoroughly briefed the questions presented herein.

On August 28, 2008, SLM Trans, Inc. ("SLM"), filed a Chapter 11 petition in the

United States Bankruptcy Court for the Southern District of Illinois (Case No. 08-60477). The case was then converted to a Chapter 7 proceeding on October 7, 2008. On April 2, 2009, Plaintiff/Appellee, Robert T. Bruegge, Trustee of the SLM Estate ("the Trustee"), instituted this action in the Bankruptcy Court for the Southern District of Illinois (Adv. No. 09-06023). The Complaint sought avoidance and recovery of an allegedly fraudulent transfer from Hal Hicks to Jeanine Hicks. More specifically, the complaint alleges that a June 8, 2004, transfer of real property located in Wayne County, Illinois, from Hal Hicks to Jeanine Hicks was fraudulent pursuant to Illinois's Uniform Fraudulent Transfer Act.

Appellants raise the following issues:

1. Whether the Bankruptcy Court had jurisdiction over this proceeding;

2. Whether the Bankruptcy Court erred in denying Appellant's Motion to Reconsider and Set Aside Entry of Default and Default Judgment;

3. Whether the Bankruptcy Court erred in conditioning vacation of the default judgment against Appellants on Appellant Hal D. Hicks agreeing to an injunction prohibiting him from transferring any property while the case remained pending; and

4. Whether the Bankruptcy Court erred in its disqualification of Attorney John Theil from representation of Appellants.

On May 11, 2010, the Court found waiver of issues on appeal and granted the Trustee's motion to strike those portions of Appellants' principal and reply briefs that relate to the requirements the Bankruptcy Court imposed as conditions for denying the Trustee's motion for entry of a default judgment, *i.e.,* that Hal Hicks was required to agree to an injunction prohibiting him from transferring any property (Issue No. 3) (Doc. 18). The Court now undertakes analysis of the remaining issues raised in Appellants' appeal.

**II.    Analysis**

Federal Rule of Bankruptcy Procedure 8013 provides that, on appeal, the District Court "may affirm, modify, or reverse a bankruptcy judge's ... order ... or remand with instructions for further proceedings." Rule 8013 further provides:

> Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

Case law of this Circuit similarly instructs that a bankruptcy judge's "[f]actual findings are reviewed for clear error; [and] legal conclusions are reviewed *de novo*." ***In re Doctors Hosp. of Hyde Park, Inc., 474 F.3d 421, 426 (7th Cir. 2007) (citing FED. R. BANKR. P. 8013 and In re Crosswhite, 148 F.3d 879, 881 (7th Cir. 1998). Accord Meyer v. Rigdon, 36 F.3d 1375, 1378 (7th Cir. 1994)(district court reviews bankruptcy judge's fact findings for clear error and legal conclusions de novo).*** Disqualification of counsel, where there has been an evidentiary hearing and findings of fact, is reviewed under the deferential abuse of discretion standard. ***In re Thomas Consolidated Industries, Inc., 289 B.R. 647, 650 (N.D.Ill. 2003) (citing Cromley v. Board of Education of Lockport Township, 17 F.3d 1059, 1063 (7th Cir. 1994))***

### A. Whether the Bankruptcy Court lacked jurisdiction over the adversary proceeding

Appellants contend that the undersigned District Judge should reverse the decisions of the Bankruptcy Court and dismiss this adversary proceeding because the Bankruptcy Court lacked jursidiction over this case. According to Appellants, the adversary proceeding is not related to the underlying bankruptcy case because the property at issue is not part of the bankruptcy estate and there is no allegation that SLM ever had any ownership interest in the property. Appellants also assert that this is not a cause of action created by the Bankruptcy Code but is a state-law fraudulent

conveyance action.

The Trustee submits that the fraudulent transfer action stems from a default judgment entered by the Bankruptcy Court in favor of the Trustee and against the Defendants that avoided the transfer of the Wayne County property. The judgment was in the amount of $305,714.50. Defendants filed a motion to vacate the judgment, which the Bankruptcy Court denied. The May 12, 2010, Report of Sale indicates that the Wayne County property sold for $623,875.00, with the proceeds ($135,707,75) deposited in the estate's checking account (08-60477, Doc. 588).

The court below premised its jurisdiction on 28 U.S.C. § 1334 and 11 U.S.C. §§ 105 and 363 (Doc. 582). The court found that the action was a "core" proceeding within the contemplation of 28 U.S.C. § 157(b)(2)(A) and (O). *Id*. The court concluded that the Trustee had demonstrated good and sufficient reason as well as compelling circumstances for the sale pursuant to § 363(b) of the Bankruptcy Code and found that approval of the sale contract was in the best interests of the estate, its creditors and other parties in interest. *Id*.

Under 28 U.S.C. § 1334(b), with exceptions not applicable herein, "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." **28 U.S.C. § 1334(b)**. Under the authority provided in 28 U.S.C. § 157(a), this Court has made a standing referral to the bankruptcy judge of "[a]ll cases under Title 11 of the United States Code, and any or all proceedings arising under Title 11 or arising in or related to a case under Title 11...." SDIL-LR Br. 1001.1.

The bankruptcy court's "arising under" jurisdiction "is limited to questions that arise during the bankruptcy proceeding and concern the administration of the bankrupt estate, such as whether to discharge a debtor." ***Zerand-Bernal Group, Inc. v. Cox,* 23 F.3d 159, 162 (7th Cir.**

**1994).** The broadest aspect of the bankruptcy court's jurisdiction is its "related to" jurisdiction, which "consists of the various proceedings based upon non-bankruptcy law which will affect the amount of property available for distribution or its allocation among the debtor's creditors." *Fort Wayne Telsat, Inc. v. Simon,* **403 B.R. 590, 593 (Bkr.N.D.Ind. 2009) (citing *In re Spaulding,* 131 B.R. 84, 88 (N.D.Ill.1990);** *see also Matter of Xonics,* **813 F.2d 127, 131 (7th Cir. 1987)**. A dispute is "related to" the bankruptcy action if "it affects the amount of property available for distribution or the allocation of property among creditors." *Matter of Xonics***, at** *id.* **(citing *In re Paso del Norte Oil Co.,* 755 F.2d 421 (5th Cir. 1985);** *Pacor, Inc. v. Higgins,* **743 F.2d 984, 994-96 (3d Cir. 1984))**.

Even though the resolution of the dispute clearly affects the amount of property available for distribution to creditors, the question framed by Appellants is whether the property at issue was part of the bankruptcy estate at all. According to the Affidavit of Shelly L. Myles, she is the President and sole owner of SLM (B.R. Doc. 226; see also Doc. 364, Financial statement, p. 9 (showing 100% of stock ownership)). Shelly Myles is Appellants' daughter. Hal Hicks's name first appears in the underlying bankruptcy action on November 5, 2008, when the Trustee moved pursuant to Bankruptcy Rule 2004 for an order directing him to appear for an examination and to produce certain documents (Doc. 148). On November 6, the Court granted the motion (Doc. 150). On April 2, 2009, the Trustee filed Adversary Proceeding 09-06023.

Although the Court finds that neither the parties' submissions, nor the record in the lead bankruptcy case and Adv. No. 09-06023 are at all clear in showing how the Wayne County property became part of the bankruptcy estate, the undersigned District Judge has persevered and found the answer in Adv. No. 08-06046, another adversary proceeding associated with the

bankruptcy action at issue. Therein, the Trustee filed a complaint for turnover and for sanctions for violation of the automatic stay (Doc. 1). In the complaint, the Trustee alleged that Hal Hicks instructed employees of SLM to remove property (such as computers, printers, photocopiers) and data (information regarding SLM's assets and business operations) from SLM's business premises and load it on a trailer van. The Trustee asserted that Hicks took this action with full knowledge of the pendency of the bankruptcy proceeding. According to the Trustee, Hicks deprived the estate not only of saleable property but also of data necessary to the administration of the estate, such as titles to over-the-road tractors and trailers.

On February 9, 2009, the bankruptcy court entered default judgment against Hicks in the aggregate amount of $305,714.50, which included actual and punitive damages plus attorneys' fees (Doc. 21). Having failed to defend the suit, Hicks belatedly entered the arena on April 5, 2009, by filing a motion to set aside default judgment (Doc. 23). On September 2, 2009, after receiving evidence, hearing arguments of counsel and reviewing all pleadings and papers, the court denied Hicks's motion to set aside default judgment (Doc. 81). An appeal to the district court followed, which was dismissed by United States District Judge G. Patrick Murphy for lack of subject matter jurisdiction (Docs. 88, 119).

Stated succinctly, Hicks attempted to deprive the SLM bankruptcy estate of property and ended up with a $305,714.50 judgment against him. And it was in aid of the collection of that judgment that the Trustee commenced the fraudulent transfer action that brought Hicks's Wayne County real estate into the ambit of the SLM bankruptcy proceeding.

Given that history, the undersigned Judge finds that the Trustee's claim for avoidance of a fraudulent transfer falls within the bankruptcy court's "related to" jurisdiction because it is

related to the uncollected judgment against Hicks in the SLM bankruptcy proceeding and will inure to the benefit of SLM's creditors. Moreover, the action falls within the bankruptcy court's "arising in" jurisdiction because but for the bankruptcy case and Hicks's conduct, the judgment and fraudulent transfer action would not exist. ***In re Repository Technologies, Inc*., 601 F.3d 710, 719 (7th Cir. 2010) (quoting** 1 **Collier on Bankruptcy ¶ 3.01[4][c][iv] at 3-27 (15th ed. rev.2008)). ("[C]laims 'arising in' bankruptcy include 'such things as administrative matters, orders to turn over property of the estate and determinations of the validity, extent, or priority of liens.' A proceeding 'arises in' bankruptcy only if it has 'no existence outside of the bankruptcy.'") (citation omitted)**.

> B.    **Whether the Bankruptcy Court erred in denying Appellants' Motion to Reconsider and Set Aside Entry of Default and Default Judgment**

**FEDERAL RULE OF CIVIL PROCEDURE 55(c)** permits the Court to set aside a default judgment for "good cause shown," in accordance with Rule 60(b). It is significantly easier for a movant to set aside an *entry* of default than it is to set aside a default *judgment*, once entered, as in this case.

The United States Court of Appeals for the Seventh Circuit has explained the standard governing motions to set aside:

> a specialized three-part standard has evolved which squarely places the burden on the moving party to show: (1) "good cause" for the default; (2) quick action to correct the default; and (3) the existence of a meritorious defense to the original complaint.... This standard was originally formulated to evaluate a district court's decision concerning a motion to vacate an entry of default under Rule 55(c) of the Federal Rules of Civil Procedure, *Breuer Elec. Mfg. v. Toronado Sys. of Am.*, 687 F.2d 182, 185 (7th Cir.1982), but was eventually applied to structure decisions involving motions to set aside default judgments under Rule 60(b). *Id*. at 187....
> While the tests are identical under either Rule 55(c) or Rule 60(b),

>respect for the finality of judgments results in the application of the test under Rule 60(b) circumstances – where a default judgment has been entered – to be much more limited and stringent. *Breuer*, 687 F.2d at 187. This narrowness is achieved by interpreting the three-part standard in light of the language of Rule 60(b)(1) which, by its very terms, **establishes a high hurdle for parties seeking to avoid default judgments and requires something more compelling than ordinary lapses of diligence or simple neglect to justify disturbing a default judgment.**

***Jones v. Phipps,* 39 F.3d 158, 162 (7th Cir. 1994)(emphasis added).**

The Court's conclusion in ***Phipps*** underscores how high the hurdle is that Appellants must clear. There the Court found that Phipps failed to show "good cause" for a default - "[t]hough she was without legal counsel for this case and in jail, Phipps had adequate time before her response was due to retain new counsel, file a request for an extension of time to response, or both – acts which were well within her abilities." *Id.* The Court can set aside the bankruptcy judge's refusal to vacate a default judgment only if "no reasonable person could agree" with his decision. ***Anilina Fabrique de Colorants v. Aakash Chemicals and Dyestuffs, Inc*., 856 F.2d 873, 883 (7th Cir. 1988) (citing *Tolliver v. Northrop Corp.,* 786 F.2d 316, 318 (7th Cir. 1986)**). "Despite the harshness of the sanctions of dismissal or default, federal courts have consistently affirmed in the absence of a good excuse for the dilatory conduct." ***Id.* (citing *Patterson v. Coca-Cola Bottling Co.,* 852 F.2d 280, 284 (7th Cir. 1988)**).

In the case at bar, the record before the Court discloses no "good cause" for failing to timely oppose the Trustee's motion for default judgment. Even though the Court had disqualified Appellants' counsel, they had adequate time - and ability - to retain new counsel or to file a request for an extension of time. The relevant facts, as shown in the record, are beyond dispute. Appellants, served with process on April 3, 2009, failed to file an answer or other response by May 4.

Thereupon, the Clerk of the Bankruptcy Court entered a notice of default entitlement.  Granted a month's extension of time, Appellants again failed to answer.  Appellants' bankruptcy counsel was not disqualified until July 13, 2009, and, at that time, the bankruptcy court extended to August 13 Appellants' deadline for filing an answer - which deadline Appellants again failed to meet.  The Trustee sought a default judgment by motion dated August 17, 2009, and the bankruptcy court entered default judgment against Appellants on August 18, 2009.

Appellants' course of conduct strikes the undersigned Judge as both dilatory and contumacious.  To now assert as "good cause" for setting aside the default that Appellants' answer was received by the court only eight days after the deadline (a third extension) and three days after the gavel had fallen comes nowhere near clearing the "high hurdle" necessary to set aside a default judgment.  Furthermore, Appellants did not seek relief from the Clerk's entry of default or file an objection to the Trustee's motion for entry of default judgment.  And, lastly, Appellants failed or refused to accept the conditions the bankruptcy court imposed for vacating the default judgment.  In sum, where the Court can only set aside the bankruptcy judge's refusal to vacate a default judgment if "no reasonable person could agree" with his decision, Appellants' repeated failures to comply with deadlines puts paid to their assertion that the bankruptcy court erred in denying their Motion to Reconsider and Set Aside Entry of Default and Default Judgment.

Even if the Court were to find good cause for setting aside the default judgment, Appellants claim of a meritorious defense also fails.  Neither the statute of limitations nor Appellants' divorce serves to bar the Trustee's claim to the Wayne County property.

**Section 5(a)** of the Illinois Uniform Fraudulent Transfer Act ("UFTA") provides that:

> (a) a transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or
> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

**740 ILCS 160/5(a).**

The UFTA has its own limitations provision, which provides that "the Trustee can bring a fraudulent transfer action within the later of four years after the transfer was made or within one year after the transfer was or reasonably could have been discovered." *In re Spatz,* **222 B.R. 157, 164 -65 (N.D.Ill. 1998) (citing 740 ILCS 160/10).** Accordingly, actions can be brought more than four years after the transfer was made if the action is brought within one year after the transfer was or reasonably could have been discovered.

The Trustee's claim could not have arisen until after SLM filed its bankruptcy action on August 28, 2008, a date that was already beyond the four years' limitations period that Appellants espouse. The Trustee filed the adversary proceeding on April 2, 2009, which was within one year of the date the bankruptcy was filed and, thus, within one year after the transfer could reasonably have been discovered. As a result, the fraudulent transfer action was not barred by the statute of limitations.

As to whether the property transfer was effectuated as part of the property settlement in the Appellants' divorce proceeding, Appellants do no more than raise this issue. Upon review

-10-

of the record, the Court finds there is not sufficient evidence to support this allegation. Appellants offer no records or testimony. And it is Appellants' burden to present sufficient evidence in the record to substantiate this claim. *See, e.g., In re United Homes of Michigan, Inc.*, **2002 WL 126518, \*4 (N.D.Ill. 2002)**; *Cho v. Holland*, **2006 WL 2859453, \*8 (N.D.Ill. 2006)**.

Analyzed another way, Appellants have not established a reason allowing this Court to vacate the bankruptcy court's judgment under Rule 60(b), such as mistake, inadvertence, excusable neglect, or misconduct by an adverse party. The Seventh Circuit has emphasized that excusable neglect requires a showing that "the actions leading to the default were not willful, careless, or negligent." *Calumet Lumber, Inc. v. Mid-America Indus., Inc.*, **103 F.3d 612, 614-15 (7th Cir. 1997) (citing** *Johnson v. Gudmundsson*, **35 F.3d 1104, 1117 (7th Cir. 1994))**. That showing has not been made (and cannot be made) in the case at bar. Nor was there any mistake justifying setting aside the judgment.

In sum, the Court finds that the bankruptcy court did not err in denying Appellants' Motion to Reconsider and Set Aside Entry of Default and Default Judgment.

**C. Whether the Bankruptcy Court erred in its disqualification of Attorney John Theil from representation of Appellants**

On August 28, 2008, John Theil represented SLM and filed its Chapter 11 bankruptcy petition. On April 21, 2009, Theil moved to withdraw his representation giving as reasons, *inter alia*, that he had not been paid and had no expectation of being paid in the future, and that he and the Trustee had become adversarial. The Trustee objected to Theil's motion and, after a hearing, on May 12, 2009, the Court denied Theil leave to withdraw.

Problems arose when Theil entered his appearance in Adversary Proceeding 09-06023 on behalf of Jeanine and Hal Hicks, Appellants herein but Defendants in the adversary

proceeding. At that point, Theil was representing both Defendants and the Debtor, SLM. On May 27, 2009, the Trustee - who did not consent to dual representation - moved to have Theil disqualified.

After a hearing, the bankruptcy court disqualified Theil as counsel for Defendants and vacated its May 12 Order denying Theil leave to withdraw as attorney of record in the bankruptcy case, thus removing Theil from *any* further participation in the matter. In so ordering, the Court found that a direct conflict of interest existed that the Trustee had not waived or agreed to waive.

Defendants moved the Court to reconsider, submitting that Theil's withdrawal from representation of SLM cured any actual or perceived conflict. The Court denied the motion, noting the absence of consent by the Trustee required by Rule 1.7 of the Rules of Professional Conduct. The court stated, "The Trustee consented to attorney Theil's Motion to Withdraw as counsel for debtor SLM Trans, Inc. *only* after this Court ruled that Mr. Theil would be prohibited from representing Hal or Jeanine Hicks in any proceedings before this Court. This 'consent' is not tantamount to a waiver of the conflict by the Trustee." Doc. 25 (emphasis in original).

Appellants rely on ***In re Restaurant Development Group, Inc*., 402 B.R. 282 (Bkrtcy. N.D.Ill. 2009) ("*RDG*")**, and ***In re Allboro Waterproofing Corp*., 224 B.R. 286 (Bkrtcy. E.D.N.Y. 1998)**, neither of which is helpful to them on the facts of this case. In ***RDG***, the Court denied the motion to disqualify counsel that represented both the debtor and two of its principals; however, the Trustee in that case waived the conflict and consented to counsel's continued representation of the debtor and the adversary defendants. In the matter *sub judice*, the Trustee has not waived the conflict and consented to Theil's continued representation. Accordingly, Appellants'

reliance on *RDG* is misplaced.

At first blush, the circumstances in *Allboro* appear to be closely analogous to those in the instant matter. Therein, the court determined that attorneys had an actual conflict of interest where they represented the debtor and defendants in adversary proceedings. The court allowed the attorneys to withdraw from representing the debtor but to continue their representation of the defendants in the adversary proceedings - although the Trustee had urged disqualification. The court found that the Trustee had not met the heavy burden of showing that disqualification was warranted. Although the facts are superficially similar, the *Allboro* case differs in significant and determinative ways.

Under the *Allboro* analysis, whether to disqualify an attorney is within the discretion of the court; albeit that discretion must be exercised only after "painstaking analysis of the facts." *Allboro*, **224 B.R. at 294 (citations omitted)**. The *Allboro* court noted that an attorney's loyalty to his first client (here, SLM) would take precedence over the preference of the second client (here, Appellants) for a particular attorney. *Id*. **(citing *In re Wingspread Corp.*, 152 B.R. 861, 864 (Bankr.S.D.N.Y. 1993) (stating that the Code of Professional Responsibility does not permit a jettison of old clients in favor of new, perhaps more lucrative, ones))**. Furthermore, in *Allboro*, legal counsel's representation of the Debtor had been limited, and counsel was not "employed with the broad responsibility of representing a corporation from the inception of a voluntary bankruptcy case" because *Allboro* was initiated by an involuntary petition. *Id*. In the current proceeding, Theil's representation cannot be described as "limited," as he was retained to file the corporate Chapter 11 petition and continued to represent SLM until his disqualification by the court more than eight months later. The *Allboro* court also found that disqualifying counsel from their representation

of the defendants in the adversary proceeding would cause unnecessary delay and result in additional costs to the defendants and the estate. *Id.* **at 295**. In the instant matter, the court allowed Appellants an additional 30 days in which to retain counsel, so disqualification of Appellants' counsel occasioned no unnecessary delay. Appellants have not shown, or even suggested, that they incurred additional expense as a result of counsel's disqualification. The court in *Allboro* also noted that there was a serious timing discrepancy where the Trustee knew or should have known of the potential conflict for two years but did nothing. *Id*. The court was skeptical of the Trustee's delay in raising the disqualification issue, "particularly in the context of an imminent adjudication of the Defendants' motions to dismiss." *Id*. No evidence of such dilatory conduct by the Trustee in raising the issue of disqualification is present in the current proceeding. In sum, the court's decision in *Allboro* does not compel a like result herein.

Theil, as attorney for SLM, had a fiduciary obligation to SLM as well as a fiduciary obligation "to act in the best interest of the entire estate, including creditors." ***RDG,* 402 B.R. at 287 (citations omitted)**. Theil's fiduciary obligation to creditors and the estate arises from SLM's obligations and duties to cooperate with the Trustee. *See* **11 U.S.C. §521(a)(3) (The debtor shall ... if a trustee is serving in the case or an auditor serving under section 586(f) of title 28, cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title;...")**. Motions to disqualify counsel require a two-step analysis. The court "must consider (1) whether an ethical violation has actually occurred, and (2) if disqualification is the appropriate remedy." ***RDG,* 402 B.R. at 288 (citing *Guillen v. City of Chicago*, 956 F.Supp. 1416, 1421 (N.D.Ill. 1997))**.

First, as to whether an actual ethical violation occurred, the Court finds that Theil

owed an undivided duty of loyalty to SLM and the estate. Rules of Professional Conduct bar him from representing parties, such as the Defendants (here, Appellants) in the adversary proceeding, whose interests are in direct conflict with the interests of creditors and the estate. At the time of the disqualification proceeding, Rule 1.7 of the Rules of Professional Conduct, applicable in the Southern District of Illinois pursuant to Local Rule 83.2 (SDIL-LR 83.2) and the Southern District of Illinois Bankruptcy Court (S.D. Ill. LBR 1001-2), provided:

> (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
> (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
> (2) each client consents after disclosure.[1]

Theil's representation of Appellants was directly adverse to the interests of SLM in fulfilling its obligations under § 521(a)(3), *and* the Trustee did not consent to the dual representation. Accordingly, an ethical violation occurred because Theil failed to comply with the applicable rules of professional conduct.

Where, as here, the bankruptcy court held a hearing and made findings of fact, attorney disqualification is reviewed under the deferential abuse of discretion standard. ***In re Thomas Consolidated Industries, Inc.*, 289 B.R. at 650 (citing *Cromley,* 17 F.3d at 1063)**. After careful review of the entire record and with appropriate deference to the lower court, the undersigned Judge concludes that there was ample evidence for the court to conclude that a conflict existed, that the Trustee did not waive the conflict and that disqualification was the appropriate remedy.

---

[1] The application of the January 1, 2010, amendment to Rule 1.7 would occasion no change in the outcome of the Court's analysis.

## III. Conclusion

For the reasons set forth herein, the Court **DENIES** Appellants' appeal. This bankruptcy appeal is hereby **DISMISSED** with prejudice. All settings herein are **CANCELED**.

**IT IS SO ORDERED.**

DATED this 12th day of July, 2010

s/Michael J. Reagan
**MICHAEL J. REAGAN**
**United States District Judge**
